UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CORELIA JACKSON | CIVIL ACTION NO. 20-1459 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHRISTUS HEALTH NORTHERN LOUISIANA d/b/a CHRISTUS HIGHLAND MEDICAL CENTER | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 12) filed by Defendant CHRISTUS Health Northern Louisiana, doing business as CHRISTUS Highland Medical Center ("CHRISTUS"). The Motion asserts that Plaintiff Corelia Jackson ("Jackson") cannot provide sufficient evidence to prove key elements of her employment discrimination claim against CHRISTUS under the Americans with Disabilities Act of 1990, as amended ("ADA"). 42 U.S.C. §§ 12101–12213. The motion is opposed by Jackson. See Record Document 18. CHRISTUS has filed a reply to Jackson's opposition. See Record Document 19.

**BACKGROUND**

Plaintiff Jackson was hired by CHRISTUS as a Patient Access Representative effective August 5, 2019. See Record Document 1 at 2. On September 27, 2019, Jackson began a period of paid leave due to a flare up of her fibromyalgia, from which she did not return prior to her termination. See id. There is some dispute over whether Jackson subsequently made all communications as instructed by her manager or human resources, and whether she complied with appropriate procedures concerning her leave of absence. See, e.g., Record Documents 12-2 at 5, 18-2 at 6–7. Eventually, CHRISTUS

terminated Jackson's employment effective October 23, 2019, stating attendance issues and failure to follow directives or comply with CHRISTUS leave policy as the reason. See Record Documents 1 at 3, 12-5 at 41.

Jackson asserts that CHRISTUS discriminated against her on the basis of her fibromyalgia as a disability, denies that she violated policy or had any unexcused absences, and seeks injunctive relief and damages. See Record Document 1 at 3–5. In the present motion, CHRISTUS asserts that it is entitled to summary judgment because Jackson cannot show any genuine issue of material fact and cannot show that she was subject to disability discrimination. See Record Document 12-1.

## LAW AND ANALYSIS

### I.     Summary Judgment Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). When reviewing a motion for summary judgment, the court must view "all facts and inferences in the light most favorable to the non-moving party." Romero v. City of Grapevine, 888 F.3d 170, 175 (5th Cir. 2018) (quoting Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010)). The Court will not "weigh evidence or make credibility findings." Renfroe v. Parker, 974 F.3d 594, 599 (5th Cir. 2020) (citation omitted). But the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Turner v. Baylor

Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

## II. Disability Discrimination Under the ADA

Title I of the ADA prohibits discrimination in various respects—including discharge—by a "covered entity" against a "qualified individual" on the basis of "disability". 42 U.S.C. § 12112(a). The key terms are all defined elsewhere in Title I, see 42 U.S.C. § 12111, and are further expounded upon by authorized regulations issued by the Equal Employment Opportunity Commission ("EEOC"). See 29 C.F.R. pt. 1630 (2021).

### A. Assumptions

As an initial matter, the Court notes that it assumes without deciding that CHRISTUS is of the class of employers that subject it to applicability of Title I of the ADA and is thus a "covered entity" as defined in the ADA. See 42 U.S.C. § 12111(2), 12111(5). The Court similarly assumes for the purpose of the instant motion that Jackson is an "employee" under the Act. See 42 U.S.C. § 12111(4). No party contests these classifications, and there is no reason to suggest they do not apply.

Similarly, the Court assumes for the purpose of analysis that Jackson's asserted fibromyalgia is a "disability" as defined by the ADA. See 42 U.S.C. § 12102. While Jackson suggests that CHRISTUS has conceded this fact, see Record Document 18-2 at 11, CHRISTUS notes that it has merely assumed this fact for the purpose of the instant summary judgment motion, see Record Document 12-1 at 13 n.48. Such an assumption does not preclude CHRISTUS from contesting Jackson's disability at a later stage, but that fact is not in play at this time. Therefore, the final threshold question in determining coverage under the ADA is whether Jackson was a "qualified individual" as protected by

Title I. See 42 U.S.C. §§ 12111(8), 12112(a). If she was not qualified for her position, then the ADA does not provide her with protection against discrimination in employment, regardless of any disability, and CHRISTUS's remaining arguments need not be considered.

### B. Qualified Individual

A "qualified individual" for purposes of Title I of the ADA is one who "with or without reasonable accommodation, can perform the essential functions of the employment position" held. 42 U.S.C. § 12111(8). Title I of the ADA protects only qualified individuals against employment discrimination "on the basis of disability." 42 U.S.C. § 12112. Determining if an individual is qualified is a two-step process. The first step is to determine if the individual satisfies the prerequisites for the position, in terms of "skill, experience, education and other job-related requirements." 29 C.F.R. § 1630.2(m). The second step is to determine if the individual can perform the "essential functions" of the position, with or without accommodations. See id. There is no genuine dispute as to whether Jackson possesses the base prerequisites for the position of Patient Access Representative, so the issue of her qualification turns on whether she can perform the essential functions of the position.

Essential functions of a position are the "fundamental job duties" and do not include "marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). EEOC interpretive guidance specifies a two-part test in determining whether a function is truly essential: (1) "whether the employer actually requires employees in the position to perform the functions that the employer asserts are essential"; and (2) "whether removing the function would fundamentally alter that position." 29 C.F.R. pt. 1630 app. at 412. The EEOC has

also provided a list of factors to consider when determining if a particular function is essential: (1) the employer's judgment; (2) written job descriptions prepared before advertising or interviewing applicants; (3) the amount of time spent performing the function; (4) the consequences of not performing the function; (5) terms of a collective bargaining agreement (not applicable here); (6) the work experience of previous similar employees; and (7) the current experience of similarly placed employees. 29 C.F.R. § 1630.2(n)(3). The Fifth Circuit gives particular weight to the "employer's judgment" factor. Weber v. BNSF Ry., 989 F.3d 320, 325 (5th Cir. 2021).

The "essential function" at issue here is regular jobsite attendance. See Record Document 12-1 at 13. "[T]here is a general consensus among courts, including [the Fifth Circuit], that regular work-site attendance is an essential function of most jobs." Weber, 989 F.3d at 325 (quoting Credeur v. Louisiana, 860 F.3d 785, 793 (5th Cir. 2017)). CHRISTUS asserts that the position of Patient Access Representative was one which could only be performed in person, and therefore that regular work-site attendance was essential to the position. See, e.g., Record Document 12-6 at 2 (from sworn statement of Teressa Scott, former CHRISTUS Manager of Patient Access and Centralized Scheduling). CHRISTUS has also provided a written job description for the Patient Access Representative position. See Record Document 12-5 at 29–32. While it is not clear whether this position summary was prepared prior to advertising the position or interviewing candidates, it is clear that the information was presented to Jackson before she started work in the position and before any of the incidents at issue here. See id. at 7 (Jackson's deposition testimony indicating she was provided the job description when she began training at CHRISTUS). The written position summary strongly supports the

assertion by CHRISTUS that the job could only be performed in person. For instance, the Patient Access Representative employee provides "welcome and easy access to the facility" and "establish[es] an encounter for any patient," "gives patient[s] documents" needed to take to other departments, "communicates the purpose of and obtains . . . signatures on all necessary hospital documents," and collects payments on accounts. Id. at 29–30. Jackson's description of her own job duties reinforces this. Aside from affirming that the written position summary was accurate, she explained her own duties as dealing specifically with patients in person to "register them, get their information," obtain signatures, collect insurance and identification cards, and so forth. Id. at 7–8.

In addition to describing a position which is handled through face-to-face interaction with hospital patients, the position summary indicates that "reliability and dependability by reporting to work when scheduled" were expected of employees in the Patient Access Representative role. Id. at 30. And Jackson affirms in her deposition testimony that she was hired to work a specific weekly shift of set hours, 6:00 p.m. to 6:00 a.m. on Friday, Saturday, and Sunday, as opposed to any kind of flexible or on-call schedule. See id. at 5. All of this evidence supports a conclusion that the Patient Access Representative position was one which could only be conducted in person, and for which regular attendance was therefore an essential function.

Jackson does not contest that her responsibilities involved interacting with patients as described above. See Record Document 18-1 at 5. However, she still contests that these duties needed to be performed in person, and therefore that regular attendance at work was an essential function of the position. See id. Jackson's argument in this respect, however, is only that CHRISTUS has not provided any written job description that requires

Jackson to perform her duties in person, and that even if regular attendance was an essential function Jackson could have performed appropriately if she were accommodated with a virtual position. See id. The Court finds such an argument unconvincing in light of the information discussed above, and Jackson provides no competent summary judgment evidence that suggests that the Patient Access Representative job could be performed virtually when all its functions were predicated upon the physical presence of hospital patients. While the Court sympathizes with Jackson's assertions that her position could be accommodated virtually in some manner in this post-pandemic world, not all jobs can be performed remotely. "'[A]n employee's unsupported testimony that she could perform her job functions from home' does not created a genuine dispute of fact to preclude summary judgment." Credeur, 860 F.3d at 793 (quoting EEOC v. Ford Motor Co., 782 F.3d 753, 763 (6th Cir. 2015)). And while Jackson complains that CHRISTUS failed to engage in an interactive process to discuss potential accommodations such as virtual work assignments, see Record Document 18-2 at 12, such a process is only required for qualified individuals covered by the ADA. If Jackson is not qualified for the position as required by the ADA, then it is immaterial whether CHRISTUS ever offered to engage in an interactive process to determine reasonable accommodations. The Court finds that regular attendance at the CHRISTUS facility was an essential function of the Patient Access Representative position.

With regular attendance being an essential function, the final question then is whether Jackson was capable of regular work-site attendance, such that she was qualified for her position. Jackson—in her deposition testimony—describes her symptoms during a fibromyalgia flare-up as "fatigue, muscle spasms, nausea, muscle soreness, joint

soreness, and dizziness," and involves pain that she rates as eight on a scale of one to ten. Record Document 12-5 at 10, 12. These flares-ups are unpredictable and can last from a "few days" to "a couple of weeks." Id. at 11–12. She notes that her fibromyalgia "always affects [her] ability to work" and that she simply has to miss work until she has recovered from a flare-up. Id. at 26. She also reports that prior to a new medication regimen, she was experiencing symptoms often enough to miss work on a monthly basis, although she reiterates that flare-ups cannot be predicted at all in advance. Id. at 26–27. Finally, in a text message Jackson sent to a supervisor during her time off work at CHRISTUS, she described not being able to "fully function properly" and mentioned having "trouble tending to my 9 month old son." Id. at 39. These self-described symptoms are those of someone who is likely not capable of performing any work at all when afflicted, even if the Court were to accept that physical attendance was not an essential function of the position. If Jackson is in such pain and experiencing such other symptoms that she is incapable of fully attending to her own routine daily activities of living, and these symptoms may occur randomly, unpredictably, and may last up to two weeks per occurrence, then Jackson would not be qualified for a position that requires as an essential function regular work-site attendance on a set schedule several days a week.

      Jackson counters this conclusion by pointing out that she never had an unexcused absence during the brief time she worked at CHRISTUS. See Record Document 18-2 at 12. Jackson and CHRISTUS disagree as to a number of facts surrounding the classification of her absences from work and how they were reported or handled. See, e.g., Record Document 18-1 at 6, 8–16. However, the classification of any single absence or whether Jackson was in violation of or compliance with leave policies is a distinct

question from whether regular attendance was an essential function of her position or whether she was qualified for that position. See Green v. Medco Health Solutions of Tex., 947 F. Supp. 2d 712, 722 n.5 (N.D. Tex. 2013). In this case, the Court finds that Jackson has provided no competent summary judgment evidence to create a genuine dispute that she was qualified for the position of Patient Access Representative at CHRISTUS, and therefore she is not entitled to protections under the ADA. As such, Jackson's claims under the ADA must fail.

## CONCLUSION

Because Jackson cannot show that she is a "qualified individual" under the terms of the ADA, she is not covered by its protections as an employee. CHRISTUS is therefore entitled to summary judgment as a matter of law on Jackson's claims. A judgment consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 22nd day of July, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT